UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEAN E. FISH,

                             Plaintiff,

v.                                                                  6:03-CV-0269
                                                                             (LEK/GHL)

COMMISSIONER OF SOCIAL SECURITY,
                             Defendant.
_____

APPEARANCES:                                             OF COUNSEL:

OOT & ASSOCIATES, PLLC                          NEAL P. MCCURN, JR., ESQ.
*Counsel for Plaintiff*
503 East Washington Street
Syracuse, New York 13202

HON. GLENN T. SUDDABY                          WILLIAM H. PEASE, ESQ.
United States Attorney for the                          Assistant United States Attorney
 Northern District of New York
*Counsel for Defendant*
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION[1]

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiff protectively filed an application for disability insurance benefits on September 12, 2001. (Administrative Transcript ("T") at 69.) The application was denied initially.[2] (T. at

---

[1] This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

[2] In her brief, the Commissioner states that "Plaintiff was permitted to appeal the initial determination to the ALJ because the Social Security Administration was testing a prototype model of handling administrative claims without requiring the claimant to seek a reconsideration of the initial

49.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on July 25, 2002.  (T. at 15-39.)  On September 23, 2002, the ALJ issued an unfavorable decision finding that plaintiff was not disabled.  (T. at 10-13.)

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on January 9, 2003.  (T. at 4-5.)  Plaintiff commenced this action on March 5, 2003.  (Dkt. No. 1.)

  **B.**  **The Contentions**

Plaintiff makes the following claims:

  (A)  The ALJ substituted his own opinion for those of Plaintiff's treating physicians.  (Dkt. No. 7 at 5-6.)[3]

  (B)  The ALJ failed to adequately consider the entire record.  (Dkt. No. 7 at 5.)

  (C)  There is not substantial evidence supporting the ALJ's decision that Plaintiff is able to perform her past relevant work.  (Dkt. No. 7 at 6-7.)

Defendant contends that the ALJ's decision is supported by substantial evidence and therefore should be affirmed.  Dkt. No. 9.

**II.**  **APPLICABLE LAW**

  **A.**  **Standard for Benefits**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity

---

determination.  65 Fed. Reg. 81553 (Dec. 26, 2000)."  (Dkt. No. 9 at 1 n.1.)

 [3] Plaintiff's Memorandum of Law does not contain numbered pages.  The Court has numbered the pages for convenience.

by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004).[4]  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. §§ 404.1520, 416.920 (2005). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [20 C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the

---

[4] As of September 25, 2003, revisions were made to certain sections of the Code of Federal Regulations; the revisions, however, have no effect on the outcome of this Report and Recommendation.

3

> SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[] [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

### B.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Serrano v. Barnhart*, 2003 WL 22683342, at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the

decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**III.   THE PLAINTIFF**

Plaintiff was born on May 6, 1944.  (Dkt. No. 7 at 2.)  She has a high school education and previously worked as a motel night auditor, bus driver, bus aide, and accounting clerk.  (*Id.*; Dkt. No. 9 at 2.)  Her daily activities include, *inter alia*, driving, cooking, cleaning, doing laundry, socializing, and taking care of her personal needs.  (T. at 143.)  Plaintiff also stated that her typical day included making crafts, doing yard work, researching her family genealogy on the

computer, and/or doing plastic canvas work. (T. at 31, 143.)

Plaintiff alleges disability due to, *inter alia*, depression, diabetes mellitus, hypertension, and arthritis. (Dkt. No. 7 at 1-2.)

## IV.  THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity. (T. at 13.) At steps two and three, the ALJ found that Plaintiff had severe impairments, but that none met or equaled a listed impairment. (*Id.*) At step four, the ALJ found that Plaintiff could perform her past relevant work and thus was not disabled. (*Id.*)

## V.  DISCUSSION

### A.  Whether the ALJ Substituted His Own Opinions for Those of Plaintiff's Treating Physicians

Plaintiff argues that "the ALJ supplanted his own opinion for those of the treating sources" and that "the evidence cited by the ALJ is not sufficient to justify disregarding the treating source opinions." (Dkt. No. 7 at 5, 6.) It appears that Plaintiff is referring to Peter Clark, M.D., and D. Sillars, M.D., as the treating sources whose opinions were disregarded and supplanted.

With regard to Dr. Clark, I find that the ALJ neither disregarded nor supplanted his opinions. Indeed, the ALJ stated that "the report of the claimant's family physician [Dr. Clark] is fully consistent with the conclusion that the claimant is mentally and emotionally able to perform a wide-range of job, [sic] although she probably could not perform a job that entails high levels of complexity or stress." (T. at 11.) This statement is supported by the record.

In October 2000 and March 2001, Dr. Clark's progress notes state that Plaintiff seemed to

be doing well with her depression and declined to increase her medication. (T. at 114, 119.) On November 26, 2001, Plaintiff was seen by Dr. Clark for a follow up appointment, and he noted that Plaintiff's anxious and depressive symptoms and agoraphobia had responded well to the medication. (*Id.*)

On March 27, 2002, Dr. Clark filled out a Mental RFC Assessment, in which he noted that Plaintiff's ability to deal with work stress and maintain attention and concentration were "limited," meaning, presumably, that she had abilities in these areas, but they were not unrestricted. (T. at 163.) On July 22, 2002, Dr. Clark completed another Mental RFC Assessment, in which he opined that Plaintiff had a "good"[5] ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, function independently, understand, remember and carry out simple job instructions, relate predictably in social situations and behave in an emotionally stable manner. (T. at 217-218.) According to Dr. Clark Plaintiff had a "fair"[6] ability to understand, remember, and carry out complex and detailed job instructions, maintain personal appearance, and demonstrate reliability. (T. at 218.) Dr. Clark further opined that Plaintiff had a "poor"[7] ability to deal with work stress and maintain concentration and attention, (T. at 217), but, as reflected in footnote "7," her abilities in these areas presumably were not precluded.

On May 1, 2000, Plaintiff's left ankle was x-rayed, which showed diffuse osteopenia and

---

[5] "Good" was defined as ability to function is more than satisfactory. (T. at 217.)

[6] "Fair" was defined as ability to function is limited but satisfactory. (T. at 217.)

[7] "Poor" was defined as ability to function is seriously limited **but not precluded**. (T. at 217, emphasis added.)

mild osteoarthritis. (T. at 115.) Almost three months later, Plaintiff told Dr. Clark that the arthritis in her ankle (which was a result of a traumatic injury) had been less problematic, but the arthritis in her shoulders and knees was worse. (*Id.*) Dr. Clark opined that Plaintiff had probable osteoarthritis and bursitis in her shoulders and prescribed ibuprofen and Tylenol. (*Id.*) In May 2002, she continued to take ibuprofen for her arthritis. (T. at 215.) On March 27, 2002, Dr. Clark filled out a Physical RFC Assessment, in which he opined that Plaintiff's ability to lift and carry and the use of her hands and feet were "affected" by her impairments. (T. at 166-169.)

In short, I find that the ALJ neither disregarded nor supplanted the opinions of Dr. Clark. Indeed, the ALJ's finding took into careful consideration Dr. Clark's opinion that Plaintiff had a "poor" ability to deal with work stress and maintain concentration and attention (T. at 217) by placing restrictions on her sedentary and light work, *i.e.*, that the work only entail low-to-moderate levels of stress.

With regard to D. Sillars, M.D., I find that he was not a "treating source." Plaintiff testified, and the evidence corroborates, that she saw Dr. Sillars only once and that he did not feel that she needed to be seen again.[8] (T. at 25, 171.) "Treating source" is defined as a claimant's own physician, psychologist, or other acceptable medical source who provides the claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with

---

[8] In her brief, Plaintiff argues that she "received treatment at the Cortland County Mental Health Clinic consistently from 10/24/01 through 3/18/02." (Dkt. No. 7 at 4.) To the extent that Plaintiff is trying to argue that the clinic is a treating source because she received "consistent" treatment there, this argument is unavailing. *See Rivera v. Sullivan*, 727 F. Supp. 137, 142 n.3 (S.D.N.Y. 1989), *rev'd on other grounds*, 923 F.2d 964 (2d Cir. 1991) ("Plaintiff also argues that the clinic itself should be recognized as plaintiff's 'treating source' for purposes of the treating physicians rule . . . . This argument completely overlooks the fact that a treating physician's opinion is given extra weight because of the doctor's *personal* knowledge of and involvement with his or her patient. A doctor who practices at a clinic does not become a treating physician with respect to every patient who has ever been treated by any doctor at the same clinic merely because of his association with that clinic.") (emphasis in original).

the claimant. 20 C.F.R. § 404.1502 (2005). The regulation goes on to state, "[g]enerally we will consider that you [the claimant] have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." *Id.*

Not only was Dr. Sillars not a "treating source," it is unclear as to whether the Mental RFC Assessment referred to by Plaintiff reflects Dr. Sillars' opinions or those of Caroline Borden, a certified social worker. (T. at 172-174.) It appears as though Ms. Borden[9] completed the form and Dr. Sillars signed it, based upon a comparison of the handwriting on the RFC Assessment and Ms. Borden's handwritten notes. (T. at 131-141, 171-174.) In any event, even if Dr. Sillars had been a treating source (which he was not) and even if the RFC Assessment reflects his opinions, he does not indicate that Plaintiff had no ability to function in any area. (T. at 172-174.) In fact, according to the Assessment, Plaintiff's abilities ranged from "poor" to "good."

In summary, the ALJ did not substitute his own opinions for those of Plaintiff's treating physicians.

### B.     Whether the ALJ Failed to Adequately Consider the Entire Record

Plaintiff's argument that the ALJ did not adequately consider the entire record, and instead relied upon only a small portion of the record to support his conclusions, is without merit.

---

[9] Ms. Borden, as a certified social worker, is not an "acceptable medical source," which is defined by the Code of Federal Regulations to include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a)(1)-(5) (2005). Thus, as Ms. Borden is not an "acceptable medical source," her opinions are not entitled to treating physician weight. 20 C.F.R. § 404.1527(a)(2).

At the outset, I note that Plaintiff does not cite to the portions of the record that she alleges were not adequately considered. Nonetheless, the Court has reviewed the ALJ's decision and the entire record. The ALJ cited to and discussed the medical evidence and reports from Dr. Clark; Ms. Borden, (including the records from the Cortland County Mental Health Clinic and Dr. Sillars); Kristen Barry, Ph.D.; Frank J. Kelly, M.A., NCC; and Kalyani Ganesh, M.D.  (T. at 11-12.) Although the ALJ did not repeat, in detail, the results of every report, he did mention and cite to every exhibit relating to medical evidence in the record, except for one, which was the residual functional capacity assessment ("RFC Assessment") completed by an agency physician. (*Id.*) I find, therefore, that the ALJ adequately considered the entire record.

    **C.**    **Whether There Is Substantial Evidence Supporting the ALJ's Decision That Plaintiff Is Able to Perform Her Past Relevant Work**

Plaintiff also argues that there is not substantial evidence supporting the ALJ's decision that Plaintiff is able to perform her past relevant work. (Dkt. No. 7 at 6-7.) The ALJ found that Plaintiff "is severely impaired by arthritis, asthma, diabetes mellitus and possible depression. She is therefore deemed to be limited to sedentary and light work that entails only low-to-moderate levels of stress. Hence, [Plaintiff] is able to perform her past relevant work as a motel night auditor, bus aide, bus driver and clerk . . . ." (T. at 12; *see also* T. at 13.)

In determining the particular types of work a claimant may be able to perform, the non-exertional and exertional limitations caused by impairments are reviewed. 20 C.F.R. § 404.1545 (2005). Non-exertional limitations are those restrictions which affect the claimant's ability "to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing, or pulling . . . ." 20 C.F.R. § 404.1569a(a) (2005).

Basic activities which are relevant for evaluating a non-exertional mental impairment include the ability to understand, carry out and remember simple instructions, use judgment, and respond appropriately to supervisors, co-workers, and usual work situations. 20 C.F.R. § 404.1521(b) (2005).

In order to conclude that a claimant can return to his or her past relevant work, the ALJ must inquire into the nature of and the mental demands associated with the past relevant work. *Donato v. Secretary of the Dept. of Health and Human Servs.*, 721 F.2d 414, 419 (2d Cir. 1983); *Welch v. Chater*, 923 F. Supp. 17, 20 (W.D.N.Y. 1996) ("When the plaintiff's impairment is a mental one, special 'care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, *e.g.*, speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work.'") (citations omitted). *See also Smith v. Apfel*, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (Hurd, J.); *Craven v. Apfel*, 58 F. Supp. 2d 172, 187 (S.D.N.Y. 1999); *Kerulo v. Apfel*, Civ. No. 98-7315, 1999 WL 813350, at *8-*9 (S.D.N.Y. Oct. 7, 1999); *Jones v. Apfel*, 66 F. Supp. 2d 518, 541-42 (S.D.N.Y. 1999) (where the Court remanded because the ALJ failed to ask Jones about her depression and other psychological symptoms at the hearing, and about the mental demands associated with her former job as a health care attendant); *Melville v. Apfel*, 198 F.3d 45, 53-54 (2d Cir. 1999) ("[S]tep four of the sequential process requires an inquiry into the claimant's ability to do her 'past relevant work'; a claimant's past work experience . . . is not 'relevant' unless, *inter alia*, it was 'substantial gainful activity'; and a proper assessment of whether past work was substantial gainful activity requires evaluation of, *inter alia*, how well the claimant performed her duties and

whether those duties were minimal and make little or no demand on her . . . ."); and *Schaal v. Callahan*, 993 F. Supp. 85, 94 (D. Conn. 1997).

In this case, the ALJ made no inquiry into the nature of and the mental demands associated with Plaintiff's past relevant work. The ALJ did ask Plaintiff about her work history, *e.g.*, where she worked, when she worked there, and for how long. However, there was no questioning regarding the physical or mental demands of Plaintiff's previous employment, especially regarding whether any of her previous jobs included any level of stress. As a result, there is not substantial evidence supporting the ALJ's decision that Plaintiff is able to perform her past relevant work.

In particular, the ALJ's finding that Plaintiff is able to perform her past relevant work as bus driver clearly is not supported by substantial evidence. At the hearing, the ALJ himself stated that Plaintiff could not perform her past relevant work in this position, as a result of her dependence on insulin.

> Atty: With the bus-driving job that you had, how long was your shift?
>
> Clmt: I'd do two hours in the morning from 7:00 until 9:00. And then I would either take a trades run, which went from 9:00 to 11:30, or 11:30 to 2:00. And then I was back on regular runs from 2:00 until 4:00.
>
> Atty: And what would you do between the runs?
>
> ALJ: She said she can't do it anymore, because she's insulin dependant.[10]

---

[10] Earlier in the hearing, Plaintiff had testified that she had to leave her job as a school bus driver because she had to have insulin therapy and she could not drive "commercially with a CDL" while on insulin therapy. (T. at 21.)

>
> Clmt:   Right.
>
> ALJ:   I'd have to say if she can't get the license to drive it, she can't do that job.
>
> Clmt:   Right.
>
> Atty:   I just brought it up because the initial denial said she could perform that job in spite of that fact. I think they were aware of it, but they said she could do the bus-driving job.
>
> ALJ:   Well, they can't ignore that. That's evidence. They can't ignore that. And that's why we've got all this big backlog because they don't want to look at these cases and evaluate them.

(T. at 37-38.) Given the foregoing statements made by the ALJ, it is inexplicable as to why he would find that Plaintiff could perform her past relevant work as a bus driver. Accordingly, the ALJ's finding in this regard is clearly erroneous.

In light of the fact that the ALJ found that Plaintiff was severely impaired by, *inter alia*, "possible depression" and that he limited her ability to work to sedentary and light work that entails only low-to-moderate levels of stress, the ALJ, in order to determine if the claimant's mental impairment is compatible with her past relevant work, should have: (1) taken "special care" to inquire into the nature of and the mental demands associated with the claimant's past relevant work and (2) obtained a precise description of the particular job duties which are likely to produce tension and anxiety, *e.g.*, speed, precision, complexity of tasks, independent judgments, working with other people, etc. *Donato*, 721 F.2d at 419; *Welch*, 923 F. Supp. at 20. Because the ALJ did not do so, this Court recommends remand.

## V.   REMAND OR REVERSAL

When there are gaps or inconsistencies in the administrative record, with no sufficiently

complete proof that the Plaintiff is disabled, the appropriate relief is remand for further or proper evaluation of the record. *Rosa v. Callahan*, 168 F.2d at 82-83. Here, there are gaps in the record, and therefore this case must be remanded for further evaluation.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[11] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: December 16, 2005
          Syracuse, New York

*/s/ George H. Lowe*
George H. Lowe
United States Magistrate Judge

---

[11] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2005).